83 U.S. 250
 21 L.Ed. 278
 16 Wall. 250
 DICKINSON
v.
THE PLANTERS' BANK.
 December Term, 1872
 
 ERROR to the Circuit Court for the District of Tennessee; the case being thus:
 One William Dickinson, a manufacturer of salt at Kanawha, in that part of Virginia now called West Virginia, had an agent selling the salt in Tennessee and thereabouts. By direction of Dickinson, this agent took the proceeds, and with them bought a draft of the Planters' Bank of Tennessee, at Nashville, on the Bank of Virginia, at Richmond; the former bank crediting the latter with the amount. The draft was in this form:
 $5224.25.
 PLANTERS' BANK OF TENNESSEE, NASHVILLE, NOV. 14, 1861.
 Pay to the order of William Dickinson, fifty-two hundred and twenty-four 25/100 dollars.
 D. WEAVER, Cashier.
 To Cashier of Bank of Virginia, Richmond.
 On his way from Nashville to Kanawha, the agent learned that on the 15th of November, that is to say, one day after the date of the draft, Dickinson had died. Accordingly, on arriving, December 6th, at Kanawha, he handed the draft and other papers connected with his agency to Dickinson's son, also named William Dickinson, who, by a will that the father had left in a bank at Lynchburg, Virginia, was appointed executor of the father's estate. These were times of the rebellion, and Lynchburg, Nashville, and Richmond were all within the Confederate lines, having at the time and for some time afterwards communication with each other, while Kanawha, being in West Virginia, was within the lines of the Federal government, and had no intercourse with any of them. Dickinson, the son and executor, was quite desirous to get the money on his draft, but being reputed to be a 'Union man,' could not with safety go to Lynchburg, to get his father's will, or to Richmond, between which and Kanawha, from 1862 till the surrender of the rebel army in 1865, there was no lawful intercourse. He, however, indorsed the check with his own name, identical with that of his father, and by that means sought to negotiate it through a Virginia bank. It being known, however, at the bank to which he applied, that the 'William Dickinson' named as payee, was the father and not the son, and the will not having been yet proved, no negotiation of the draft could be made. Dickinson, the son, then, March, 1864, applied to the Federal headquarters for a pass to get through the Union lines, but was refused; nor could he get any pass till February, 1865, when getting papers from the headquarters of both armies, and having got the will and had it proved, he went to Richmond in the latter part of May, 1865, which the evidence went to show was as soon as he could get there, and indorsing his draft properly, presented it for payment. Payment was refused, the bank having recently become insolvent. He then had the draft protested by a notary, and directed the notary to give notice of the dishonor to the Planters' Bank of Tennessee at Nashville, and that the holder would look to that bank for payment. A notice to the Planters' Bank of Tennessee was accordingly deposited by the notary in in the post-office; but that it was directed to the Planters' Bank of Tennessee at Nashville, Tennessee, was not so clearly shown. The cashier of that bank testified that he received no notice. It was not denied that the Bank of Virginia, at Richmond, had funds during all this time of the Planters' Bank.
 Dickinson, as executor of his father's estate, now brought assumpsit in the court below, against the Planters' Bank of Tennessee. The narr contained two counts; the first special on the draft; and the second for money had and received. The bank pleaded the general issue, and on the trial relied apparently in part on the non-intercourse act of July 13th, 1861 (chapter 3), and the President's proclamation of August 16th of the same year. The parties having taken depositions on both sides, 'filed,' as appeared by a recital in the judgment in the case, 'a stipulation in writing with the clerk of that court, waiving a jury, and the cause came on to be tried and determined by the court.'
 An act of March 3d, 1865, thus enacts:
 'SECTION 4. That issues of fact in civil cases in any Circuit Court of the United States, may be tried and determined by the court without the intervention of a jury, whenever the parties or their attorneys of record file a stipulation in writing with the clerk of the court waiving a jury. The finding of the court upon the facts, which finding may be either general or special, shall have the same effect as the verdict of a jury. The rulings of the court in the cause in the progress of the trial, when excepted to at the time, may be reviewed by the Supreme Court of the United States upon a writ of error or upon appeal, provided the rulings be duly presented by a bill of exceptions. When the finding is special, the review may also extend to the determination of the sufficiency of the facts found to support the judgment.'
 The court gave an 'opinion' and subsequently a judgment. They were in these words.
 OPINION.
 The court, after hearing the testimony and argument of counsel on both sides, is of opinion, and doth declare that the bank check drawn by the Planters' Bank of Tennessee on the Bank of Virginia, at Richmond, on the 14th of November, 1861, was so drawn by the request of the agent of William Dickinson, the plaintiff's testator, and in pursuance of the instructions of said William in his lifetime; that the said contract was not an illegal transaction according to the provisions of the non-intercourse act of July 13th, 1861 (chapter 3), and the proclamation of the President of the 16th of August, 1861, as it was drawn at Nashville on Richmond, both of which were in the lines of the Confederate or rebel government, and no agreement existing that it was to be sent beyond those lines, where intercourse was prohibited; that at the time when said check was drawn, and for several weeks afterwards, there was regular communication by mail and railroad between Richmond and Nashville, and the Planters' Bank drew checks from time to time, until the latter part of February, 1862, for considerable sums of money, which were paid by said bank at Richmond, and that at the time of drawing the check of the 14th November, 1861, and during the whole period of the civil war, and afterwards, the Planters' Bank had funds in the said Bank of Virginia, at Richmond, and that said bank is now indebted to the Planters' Bank of Tennessee in a large sum of money, and that said Bank of Virginia is insolvent. It further appeared to the court that, on the day of the drawing of the check by the Planters' Bank specified in the declaration, a credit was given on their books to the said Bank of Virginia for the amount of said check so drawn.
 This court is of opinion, and doth declare that this check, when executed and delivered to the agent of William Dickinson, was an absolute appropriation of so much money in the Bank of Virginia to the holder of the check, to remain there until called for, and could not, therefore, be afterwards withdrawn by the drawers. If the holder of the check chose to transmit the same to the country with which intercourse was prohibited, and by the casualties of war or other accidents, it was rendered difficult or impossible to present the check for payment, and the bank on which it was drawn became insolvent, the drawer of the check having the funds in the Virginia bank would not be responsible for the loss by such insolvency.
 This court is also of opinion that there is not sufficient evidence of a notice to the defendant of the demand and protest of the check, which protest was made on the 30th of May, 1865. The cashier of the bank received no notice, as he states in his testimony, and it is not proved that the notice was directed to Nashville, the place of business of the defendant, but only to the Planters' Bank of Tennessee.
 The plaintiff's counsel excepted to the opinion and rulings of the court, discharging the defendant from responsibility upon the draft sued on.
 The plaintiff further requested the court to find and so decide, that William Dickinson, the owner of this draft, having died in Virginia, on the 15th day of November, 1861, the day after the draft was made and delivered to his agent Creasey, that it made no difference and could not change the responsibility of the party by its being on the 6th of December, afterwards carried to Kanawha, the late residence of William Dickinson. Because if it had been retained in Tennessee and sent directly to Richmond, it could not have been presented and paid only to the legal representative of William Dickinson, deceased. That William Dickinson, the executor, was residing at Kanawha, and the will was in the Lynchburg Bank of Virginia. That he could not prove the will and qualify as executor before he did, and was unable to go to Richmond and have the draft presented and protested before he did, and consequently the plaintiff had a right to recover.
 The plaintiff requested the court to decide from the facts and circumstances proved, due notice of the protest was given the defendant. The plaintiff requested the court to decide that the plaintiff under the second count had a right to recover, for so much money had and received by defendant to his use; all of which requests made by the plaintiff the court refused to comply with, but rendered judgment against the plaintiff for costs of suit.
 To which action of the court the plaintiff excepts, and tenders this his bill of exceptions, which is signed and sealed by the court, and made a part of the record.
 CONNALLY F. TRIGG. [SEAL.]
 Final judgment entered May 12th, 1868.
 JUDGMENT.
 The parties again appeared, by their attorneys, and the said parties, by their attorneys of record, having filed a stipulation in writing with the clerk of this court, waiving a jury, and the cause coming on to be tried and determined by the court, and having heard the evidence and argument of counsel on both sides, the court is of opinion that the issues are in favor of the defendant, and that the defendant did not assume and promise as the plaintiff in declaring has alleged. It is therefore considered by the court that the defendant recover of the plaintiff the costs by it about its suit in this behalf expended; and that fi. fa. issue for the same.
 This judgment was brought here for review.
 The record reported what purported to be all the evidence in the case; a large number of depositions, from which the facts as given, supra, pp. 250-252, were derived by the reporter.
 Mr. Reverdy Johnson (with whom was Mr. H. B. Cooper), for the plaintiff in error, assuming that the facts stated as above by the reporter, or others like them, and those stated also by the court in its opinion, was the case now before this court, argued that the rulings of the court below were erroneous, and that the judgment should be reversed.
 I. Because, under the circumstances, appearing in the record, in the depositions of the witnesses, if the jury believed the evidence—and it was for them to pass upon it—it was impossible for the plaintiff to have presented the check for payment sooner than he did. Now the rule of law in such cases is, that demand is to be made within a reasonable time, and that what is a reasonable time is for the jury, to be decided upon a consideration of all the circumstances.
 II. That the judge erred in deciding that if the demand was in time, notice of non-payment was not properly given to the defendant, because the notary's letter containing the protest, was not directed to Nashville, but only to the Planters' Bank of Tennessee. Because——
 1st. If the evidence proved only that the notary's letter was directed to the bank generally, and not to Nashville, under the circumstances the jury might have inferred that it reached Nashville in due course.
 2d. Because in fact there was evidence in the testimony of the plaintiff and of Johnson, that the notary's letter was directed to the defendant at Nashville.
 
 Mr. Conway Robinson, contra:
 
 The trial must be taken to have been under the act of the 3d of March, 1865, and the finding of the court upon the facts being general, its finding has the same effect as the verdict of a jury. When there are no rulings in the progress of the trial, which can be reviewed, the finding of the court stands like a verdict; and the judgment on the finding stands like the judgment on a verdict. There being 'in the progress of the trial,' no rulings of the court—none 'excepted to at the time,'—none shown to be erroneous, the judgment on a general finding, like the judgment on a general verdict, must be affirmed.[1] Such is the case here. The plaintiff in error is in the same position as if he were here complaining that the jury erred in overruling the points and propositions which were argued to them in his behalf, and had found for the defendant when they should have found for the plaintiff.[2] Clearly, it is so as to all that follows these words on p. 254:
 'The plaintiff further requested the court to find and so decide.'
 And as to all that follows these words on the same page:
 'The plaintiff requested the court to decide from the facts and circumstances proven.'
 Mr. Justice STRONG delivered the opinion of the court.
 
 
 1
 It is very clear that in this case there was no special finding of facts upon which any judgment for the plaintiff could have been rendered. The suit was an action to recover the amount of a check dated November 14th, 1861, drawn by the defandants in error upon the Bank of Virginia, at Richmond, and payable to the order of the plaintiff's testator. To the declaration the defendants pleaded the general issue, and the parties, by written stipulation filed with the clerk of the court, waived a jury. It is true that no such stipulation has been sent up with the record, but in the judgment it is recited that such a one was made and filed. We must, therefore, hold that the issue was tried by the court under the act of March 3d, 1865, which gives to the finding of the court upon the facts (which finding may be either general or special), the same effect as the verdict of a jury. It is, however, only when the finding is special, that the review of this court can extend to the determination of the sufficiency of the facts found to support the judgment.
 
 
 2
 Here the record as returned contains what is stated to have been all the evidence in the cause, but the court has not found what the evidence proves, nor any ultimate facts except that stated in the judgment, 'that the defendant did not assume and promise as the plaintiff in declaring has alleged.' Some facts indeed are stated in the opinion of the court, that seem to have accompanied the judgment, but they are not stated as a special finding. They are rather advanced as reasons why the judge came to the conclusion that the alleged promise of the defendants had not been proved. It is impossible to regard anything that appears in this case as equivalent to a special verdict. Plainly to a recovery by the plaintiff it was indispensable that the check drawn in favor of his testator had been presented for payment in a reasonable time, or that there had been a sufficient excuse for non-presentation, and that notice of its dishonor had been given duly to the drawers. These were questions of fact submitted for determination to the court. But it nowhere appears in the finding, when, if ever, the check was presented, or if presentation was delayed what circumstances caused the delay, or whether the delay was reasonable or unreasonable. Nor is it found what notice, if any, was given to the defendants of the dishonor of the check. So far as anything appears, it is in the opinion of the court, which was that 'there was no sufficient notice of the demand and protest of the check, which protest was made on the 30th of May, 1865.'
 
 
 3
 We cannot, therefore, inquire whether the evidence as detailed by the witnesses was sufficient, under the circumstances, to justify a finding that the presentation and demand were made in a reasonable time, or whether it might have been inferred that notice of non-payment was duly given.
 
 
 4
 But though the finding was general, any rulings of the court in the progress of the trial, if excepted to at the time and duly presented by bills of exceptions, may be reviewed by us. This is provided by the act of 1865. Manifestly, however, the rulings thus subject to review are decisions of law, not findings of fact. Some requests appear to have been submitted to the court to find certain facts, which were refused. They are no more the subject of exception and review than would be a request to a jury to find in a particular manner, and a refusal by the jury so to find. One request also was that the court should decide that the plaintiff had a right to recover under the second count of the declaration, for money had and received. This also was refused, and so far as we can see, very properly. The record presents nothing which would have justified such a decision. There is nothing else in the case that requires notice.
 
 
 5
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 Burr v. Des Moines Co., 1 Wallace, 102; Insurance Co. v. Tweed, 7 Id. 51; Basset v. United States, 9 Id. 40; Norris v. Jackson, Ib. 125; Flanders v. Tweed, Ib. 425; Copelin v. Insurance Co., Ib. 462; Coddington v. Richardson, 10 Id. 516.
 
 
 [2]
 Generes v. Campbell, 11 Wallace, 198; Miller v. Life Insurance Co., 12 Id. 300, 301.