### UNITED STATES v. DAVIS.
#### No. 10704.

United States Court of Appeals
Seventh Circuit.
March 10, 1953.

5.   Rep.No.573, on S. 1958, 74th Cong., 1st Sess., p. 7.

G. William Horsley and L. H. Lenz, Springfield, Ill., for appellant.

Marks Alexander, U. S. Atty., and Robert G. Heckenkamp, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal by the surety from a judgment entered on an appearance bond

which had been given by the defendant in a criminal action which was pending in the United States District Court for the Southern District of Illinois, Southern Division.

On March 12, 1952, the grand jury returned an indictment containing six counts against Ralph Levi Davis (hereinafter called defendant), charging him with violation of the White Slave Traffic Act, 18 U. S.C. §§ 2421 and 2423. On March 31, 1952, defendant entered a plea of not guilty and on the same day appeared before a United States Commissioner, who ordered that an appearance bond in the sum of $10,000 be given. A bond in that sum in the usual form was executed by the defendant as principal and by Etta Mae Ferguson as surety. The negotiations for the bond were carried on by the husband of the surety, John Ferguson, a professional bondsman licensed under the laws of the State of Illinois, and who received a fee of $500. Both defendant and surety were notified that the trial of the case was set for June 30, 1952. The jury and a number of witnesses subpoenaed were present at the appointed time, but the defendant did not put in an appearance. The district judge ordered the bond forfeited and issued a bench warrant for defendant's arrest. The following day the United States Attorney asked the court to enter a judgment of default on the bond. The matter was continued for hearing until July 29, 1952.

Defendant was arrested in El Paso, Texas, on July 8, 1952, by agents of the F. B.I. and was returned to Springfield, Illinois. On July 27th and 28th, John Ferguson visited defendant at the jail, and urged him to enter a plea of guilty and suggested that it would be to defendant's advantage to save the government the expense of a trial; further, that defendant would not then need the services of a lawyer. He also suggested that based upon his experience in other cases, defendant might expect a sentence of two to five years on each count, same to run concurrently.

On July 29, 1952, the defendant appeared before the district judge and informed him that he did not desire the services of an attorney, withdrew his plea of not guilty, and entered a plea of guilty, as charged. The court thereupon sentenced defendant to six consecutive terms, totaling twenty years. During a colloquy that followed defendant said to the court, "You can thank Mr. Ferguson that I pleaded guilty." At another point in the hearing defendant said that he was guilty, but not to the extent charged.

After the sentence was imposed and when the court was considering the government's motion for judgment on the appearance bond, the surety requested that there be remitted to her the amount of the bond over and above such sum as would fairly compensate the government for the expenses incurred by it by reason of defendant's failure to appear on June 30. However, the court ordered that judgment be entered for the full amount of the bond, saying, "This defendant undoubtedly has caused the government an expense probably in excess of the face of this bond. I only know in a small way about the expenses incurred by the government at the time the case was set for trial. I know a jury was summoned, especially for this case, the only case. Various witnesses from remote parts of the country were here, and the expense of all of that has been borne by the government. I don't know just what the expenses of the F.B.I. have been in the apprehending of this man who failed to appear here on June 30. He was arrested down in Texas and brought here to trial. The expense has been very large; not only the F.B.I. in Springfield, but the F.B.I. all over the country was alerted to find this man." Testimony was not received as to the amount of the expenses which had been incurred by the government.

The surety contends that there was an abuse of the district court's discretion in failing to remit some part of the amount of the bond, and draws our attention to the following facts with reference to which there is little, if any, dispute. Although John Ferguson was not acquainted with the defendant, he was requested by friends of the defendant to execute the bond. The Sheriff of Clinton County said that he thought defendant was all right, and rec-

ommended that Ferguson go on his bond. Several days prior to June 30 Ferguson contacted defendant who assured him that he would be present at the trial. After the default, Ferguson made three or four trips to Quincy, Illinois, and one late at night to East St. Louis, endeavoring to locate the defendant. In the attempt to ascertain defendant's whereabouts Ferguson also placed several long-distance telephone calls, talking among others to defendant's mother. Ferguson testified he knew the F.B.I. was looking for defendant and did not wish his efforts to conflict with their plans or activities. Surety also points out that after defendant was arrested, Mr. Ferguson was instrumental in having defendant plead guilty, which saved the government the expense of a trial. The surety argues that as to the expense of the jury and witnesses mentioned by the district judge, had defendant appeared on June 30 and stood trial the surety would not have been liable for any part of these expenses and that by defendant's plea of guilty on July 29, it became unnecessary for the government to incur such expenses again.

Surety admits that the default of the defendant was willful. Prior to March 21, 1946, under the applicable statute, 18 U.S. C. § 601, the courts had consistently held that a district court had no power to remit any part of the forfeiture where the default on the part of a defendant was willful. Continental Casualty Co. v. United States, 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426; United States v. Legg, 4 Cir., 157 F. 2d 990.

■ The Federal Rules of Criminal Procedure became effective March 21, 1946, and Rule 46(f)(2), 18 U.S.C., provides, "The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." It is evident that under this rule a district court has a discretion to give relief to bondsmen in criminal cases upon default, even though such default be willful. It is stated in Barron and Holtzoff, Federal Practice and Procedure, Vol.

4, Sec. 2507, p. 419, "Thus the court may now remit the forfeiture even though the defendant willfully defaulted and may base a partial remission upon considerations of expense and inconvenience to the government."

The surety insists that the above-narrated facts show that the language of Rule 46(f)(2), "* * * justice does not require the enforcement of the forfeiture," is applicable, and points to the language of Chief Justice Marshall in United States v. Feely, Fed.Cas.No.15,082, 1 Brock 255, "The object of a recognizance is, not to enrich the treasury, * * *." She points out that when, under the old statute, the courts had no discretion, Congress frequently passed private acts remitting the forfeiture in part after deducting an amount sufficient to recompense the government for any expenses incurred by it as the result of the default.[1] Surety also urges that the record does not contain any evidence as to the expenditures incurred by the government and that it became incumbent upon the government to prove to a reasonable degree the monies expended in connection with the default.

The government points out that Congressional private acts remitting a portion of the forfeiture were usually enacted where bondsmen produced the defendant, and that such was not the case here. The government argues that at best remission of a forfeiture is granted as an act of grace, United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559, and that in the case at bar the district court did not abuse its discretion.

■ Although we believe that this is a case where the district court might well have remitted a portion of the amount forfeited, we cannot say that there was an abuse of discretion. We must keep in mind that the discretion is to be exercised by the district court and not by a court of review. This court should not substitute its discretion for that of the district court.

■ "The term 'discretion' denotes the absence of a hard and fast rule. The

---

1. Statement by Hon. Alexander Holtzoff at Institute on Federal Rules of Criminal Procedure at New York University School of Law, Feb. 15–16, 1946.

Styria v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L. Ed. 520.

This court may feel that the ruling of the district court in failing to remit was severe or even harsh, but unless we conclude that such action was arbitrary and capricious, we are not at liberty to grant any relief—any more than we could change the sentence here imposed on the defendant, which falls within the statutory limit, even though we might feel it excessive.

Nor do we think the government was under any obligation to produce evidence to show even approximately the total amount of expenses caused by defendant's default. The court might well have directed an inquiry on this subject, but was under no obligation to do so. The terms of the bond were definite: "* * * but if the defendant fails to perform this condition payment of the amount of the bond shall be due forthwith." The bond is a contract between the surety and the government that if the latter will release the principal from custody the surety will undertake that the principal will appear personally at any specified time and place to answer. Upon the failure of the principal to so appear, the surety becomes the absolute debtor of the United States for the amount of the penalty. United States v. Hickman, 7 Cir., 155 F.2d 897. Appellant's husband must accept the hazards of his occupation. When he writes a bond he assumes the great risk involved if his faith is misplaced in the person who executes the bond as principal. Under the facts of this case the surety must be considered in the same category as her husband, who carried on the negotiations for the bond and who received the $500 premium. Judgment affirmed.