SMALDONE v. UNITED STATES.

VARONE et al.

v.

UNITED STATES.

Nos. 4738 and 4739.

United States Court of Appeals, Tenth Circuit.

March 16, 1954.

Joseph N. Lilly, Denver, Colo., for appellants James J. Varone, Lena Varone, Mildred Smaldone and Mamie Smaldone.

Thomas J. Morrissey, Denver, Colo. (F. E. Dickerson, A. F. Zarlengo and W. F. Dwyer, Denver, Colo., on the brief), for appellant Eugene Smaldone.

James W. Heyer, Asst. U. S. Atty., Denver, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

These are appeals by which it is sought to have reviewed an order forfeiting a bail bond, a judgment against the principal and sureties on the bond, an order denying a motion to set aside the judgment, and an order denying remission of the forfeiture.

An indictment was returned in the United States Court for Colorado in which Eugene Smaldone was charged with the offense of attempting to evade and defeat income tax. Smaldone, as principal, and Mildred Smaldone, Mamie Smaldone, James J. Varone, and Lena Varone, as sureties, executed a bond payable to the United States. The bond was for $10,000; was conditioned that the defendant should appear in the court in accordance with all orders and directions of the court relating to his appearance; and provided that if it was forfeited and the forfeiture was not set aside or remitted, judgment might be entered upon motion of the United States Attorney against each debtor jointly and severally for the amount of the bond, together with interest and costs. The cause was set for trial. When it was reached and called for trial, the defendant did not appear. Later in the day, an order was entered forfeiting the bond and directing the United States Attorney to file a motion for the entry of judgment of default against the sureties. Two days thereafter, the defendant filed a motion to vacate the order forfeiting the bond. Later, the United States Attorney filed a motion for judgment against the sureties. Judgment was entered that the forfeiture of the bond be made absolute and that the United States recover from the principal and sureties the full amount of the bond, together with costs. The sureties subsequently filed motions to set aside the judgment; and the principal and sureties filed motions for the remis-

sion of the forfeiture. The several motions were denied, and these appeals were seasonably perfected from that action.

■ Prior to the date on which the Federal Rules of Criminal Procedure, 18 U.S.C.A., became effective, remission of a forfeiture of the kind here involved was governed by 18 U.S.C. § 601. The statute provided in substance that whenever such a bond was forfeited by a breach of the condition thereof, the court might, in its discretion, remit the penalty in whole or in part whenever it appeared to the court that there had been no willful default of the party, that notwithstanding the default a trial of the cause could be had, and that public justice did not otherwise require that the penalty be enforced. Under the statute, there were three essential requisites for remission. One was non-willfulness; another was that despite the default, a trial of the cause could be had; and a third was that public justice did not otherwise require the enforcement of the penalty. Continental Casualty Co. v. United States, 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426; United States v. Nordenholz, 4 Cir., 95 F. 2d 756. But after the Federal Rules of Criminal Procedure became effective, the statute no longer had any controlling force. United States v. Smith, D.C., 5 F.R.D. 274.

■■ The Federal Rules of Criminal Procedure were in effect at all times material here. Rule 46 relates to bail. Paragraph (f) (2) of the rule provides that the court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture; and paragraph (f) (4) provides that after entry of judgment on the forfeiture, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of the subdivision. The rule is broader than was the statute in that it eliminates non-willfulness and the existence of circumstances permitting a trial of the cause as essential requisites to the remission in whole or in

part of the judgment on the forfeiture. Under the rule, the court has discretion to grant relief upon default, even though the default be willful, and even though existing circumstances do not make possible a trial of the case. United States v. Davis, 7 Cir., 202 F.2d 621, certiorari denied Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404. And in this connection, the term discretion when used as a guide to judicial action means sound discretion, not discretion exercised arbitrarily but with due regard for that which is right and equitable under the circumstances. It means discretion directed by reason and conscience to a just result. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L. Ed. 520; United States v. Davis, supra.

Flanked by this legal background, the parties present the crucial question whether denial of the motion to vacate the judgment and denial of the motions for remission of the forfeiture constituted an abuse of discretion. Some of the pertinent facts were brought into the record by evidence, some by statement of the court, some by letter to the court, some by hospital records, and some by affidavits. Brought into the record in one or more of such methods, these facts were before the trial court at the time the motions were denied. The criminal case was set for trial on Tuesday, June 2, 1953, at 9:30 o'clock. Sometime during the immediately preceding week, the attorneys for the defendant called on the court and stated in substance that a postponement of the trial was desired and gave the reasons therefor. But the court advised the attorneys that the postponement would not be granted; that the case would proceed to trial unless there was something very serious; and that they should prepare accordingly. For approximately six years previous to the time set for the trial of the cause, the defendant had been subject to a periodic or recurring functional deficiency of the gall bladder; and for some period preceding the date set for the trial, he had been a patient from time to time of Doc-

tor Good and Doctor Hines. On Wednesday preceding the date set for the trial, Doctor Good examined the defendant in connection with an ailment concerning which he was complaining. Doctor Good referred the defendant to Doctor Hines, an internist, for diagnosis. On the same day, Doctor Hines examined the defendant and as the result of the examination felt that he was in need of hospitalization in order properly to diagnose his ailment. Doctor Hines was to be absent from Denver for four days; and in view of such absence, he arranged for a room at Mercy Hospital and ordered entrance of the defendant as of Monday, June 1, at which time the doctor planned to return. On Sunday afternoon, Doctor Good received a telephone call from the wife of the defendant and in the course of the conversation she told the doctor that the defendant's symptoms seemed to be aggravated. The doctor arranged for the defendant's entrance into the hospital on that day which was one day ahead of schedule, and he did enter the hospital that afternoon. On Monday, Doctor Hines had returned and examined the defendant at the hospital, and the doctor felt that his condition was such that hospitalization should be continued. On that day, the attorneys for the defendant presented to the court a motion for continuance of the case. The grounds of the motion were that at the request of his family physician, the defendant had been hospitalized; that he was under the care of his physicians; and that he would be unable to attend the trial the following day. The motion was not supported by a physician's certificate, an affidavit, or otherwise; and it was denied. On the following morning when the case was called for trial, the attorneys for the defendant were present and they advised the court that Doctor Hines had told them on the telephone that morning that the doctors were not sure of their diagnosis; that the defendant was suffering pain; and that while he could be brought into court and perhaps endure the pain and suffering, yet he was not in condition

to come to trial. And the attorneys also stated to the court in chambers that the defendant went to the hospital against their advice. The court postponed the matter of the trial for a short while. The court and Doctor Hines communicated with each other. The record indicates that the communication occurred shortly after the time of the trial was postponed for a short period, and the record further indicates that the communication was by telephone. In any event, the court stated in the course of the hearings on the motions that the doctor told him that the blood count of the defendant was normal that morning; that he was unable to say that the defendant was suffering from appendicitis, gall bladder, or anything else; that there was a long history of that kind of illness; and that it would not disturb the defendant to bring him to court. The court directed the attorneys to bring the defendant into court. When the attorneys reached the hospital, the defendant was undergoing X-ray examination. He was removed from the X-ray room and brought into court, and the trial began at about 11:15 o'clock. After the trial began and before the court was recessed for lunch, the court observed that the defendant was apparently in discomfort; that he kept sending the Marshal over to his attorneys; and that he was interrupting his attorneys. As noon approached, the attorneys approached the bench and told the court that the defendant was interrupting and disturbing them, and they indicated to the court that if he were permitted to leave the court at recess, they did not know how they were going to get him back. Just before the court was recessed for lunch, the court ordered the bond forfeited and the defendant placed in custody. After the court recessed for lunch, the court appointed Doctor Prinzing to examine the defendant and report. Doctor Prinzing conducted the examination in the office of the Marshal and he made a verbal and a written report. The record does not disclose the substance of the verbal report; but it was stated in

the written report, in the form of a letter addressed to the court, that the defendant appeared ill; that he had eaten no food since Monday night; that he had vomited on several occasions; that his temperature was normal, but he was quite tender over the right upper and lower quandrant of the abdomen; that he was especially tender and with some rigidity and rebound of the abdominal wall directly over the right lower quandrant under which lay the appendix; and that in the opinion of the doctor, the defendant should be returned to the hospital and continue under the care of Doctor Hines and Doctor Good. After the trial was resumed in the afternoon, the defendant displayed illness in the court room and it was observed by the court. At about 3:30 o'clock, the defendant left the court room and went to the men's rest room where he vomited and appeared to be in great pain. He was then taken to the office of the Marshal and Doctor Hines examined him there. The doctor found that his condition was considerably worse; and upon taking a blood count, the doctor determined definitely that an operation was needed. Sometime after the examination of Doctor Hines made in the office of the Marshal, Doctor Good examined the defendant, consulted with Doctor Hines, and talked by telephone with Doctor Prinzing. About 9:15 o'clock in the evening, Doctor Good performed an appendectomy. While the appendix was not ruptured, the patient had acute appendicitis; and it was the belief of Doctor Good that apparently the condition of the appendix had been the cause of the defendant's complaints for the several days previous to the operation, although his ailment had not been diagnosed as appendicitis until shortly before the operation. It was the scientific belief of Doctor Hines and Doctor Good that the ordering of the defendant to the hospital was prompted by good medical practice. And the action of the doctors in ordering him there was not in anyway an attempt on their part to avoid his attendance at the trial. Several days

after the operation, the trial of the cause was resumed and resulted in a hung jury.

It may well be that some of the early facts and circumstances, considered separate and apart from the later developments, lend support to the view that the action of the defendant in going into the hospital against the advice of his attorneys and in failing to appear at the time set for the trial of the case, were means which he employed to avoid the trial. But the stark facts that the defendant entered the hospital with the approval and pursuant to arrangements made by physicians of unquestioned professional ability and standing; that he did not eat food after Monday night and vomited from time to time; that he was undergoing X-ray examination at the time his attorneys went to the hospital, had him removed from the X-ray room, and took him to the court; that almost immediately after the trial began the court observed that he was apparently in discomfort, was sending the Marshal over to his attorneys, and was interrupting them; that based upon an examination conducted during the recess of the court, it was the opinion of the physician appointed by the court to make such examination that the defendant should be returned to the hospital and continue under the care of Doctor Hines and Doctor Good; that less than two hours after the trial of the cause was resumed in the afternoon, the defendant became violently ill, hurriedly left the court room, went to the rest room, vomited, and gave indication of extreme pain and suffering; that when Doctor Hines examined the defendant in the office of the Marshal, he found that his condition was considerably worse; that upon the taking of a blood count, it was the opinion of Doctor Hines that an operation was needed; that after consultation or communication among or between Doctor Hines, Doctor Good, and Doctor Prinzing, the operation was performed that evening; that the operation disclosed acute appendicitis; and that in the opinion of Doctor Good the condition of the appendix was the

cause of the defendant's complaints for several days preceding the operation, established an unrebutted prima facie showing that justice did not require the enforcement of the forfeiture and that the denial of the motion to vacate the judgment and the denial of the motions for remission of the forfeiture constituted an abuse of discretion.

The judgment entered upon the order of forfeiture and the order denying remission of the forfeiture are severally Reversed.