**UNITED STATES of America**
**v.**
**Emilio CIENA, Defendant,**
**Public Service Mutual Insurance Company, Surety on Bond.**

United States District Court
S. D. New York.
June 9, 1961.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, for United States, James G. Starkey, Asst. U. S. Atty., New York City, of counsel.

Fred Flatow, New York City, for surety.

DIMOCK, District Judge.

This is a motion for reargument of a denied motion to remit forfeiture of $500 bail. Defendant, charged in a complaint with violations of the narcotic laws, was arrested and, on April 18, 1960, gave a corporate surety bail bond in the sum of $500. He was indicted on March 6, 1961. The case was set for pleading on March 14, 1961. A no-tice was sent to the address of defendant given in the bond but it was returned "not at address given". Defendant defaulted and his bail was declared forfeit. On March 22, 1961, defendant was arrested at the address given which proved to be his mother's house. He thereafter pleaded guilty and was sentenced to imprisonment.

The corporate surety moved to set aside the forfeiture under Rule 46(f)(2) F.R.Crim.P. which reads as follows:

"(2) Setting Aside. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture."

I denied the motion on the grounds that, with such a small bond, the expense to which the Government had been put could hardly have been less than the amount forfeited and that, even if there was any balance, the loss of it was a risk of the business that the corporate surety undertook.

The motion for reargument has led me to further consideration and study.

Before the adoption of the Federal Rules of Criminal Procedure in 1946 the power of the court to set aside a forfeiture of bail was limited by the then section 601 of title 18 U.S.Code to cases in which a principal's default had not been willful. As above indicated the court may now exercise such power "if it appears that justice does not require the enforcement of the forfeiture." See United States v. Public Service Mutual Insurance Co., 2 Cir., 282 F.2d 771; United States v. Davis, 7 Cir., 202 F.2d 621, certiorari denied sub nom. Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404; Smaldone v. United States, 10 Cir., 211 F.2d 161.

Most bail bonds are written by professional sureties who protect themselves in whole or in part by indemnity agreements and security.

If the principal jumps bail and is not re-arrested, complete and permanent forfeiture of bail seems to be universal.

The Government would rather have the fugitive than the money though, so that, for one thing, public policy favors some tempering of the penalty as an inducement for the surrender of the principal by himself or by the surety or those who furnish security or indemnity. The fugitive may feel under obligation to mitigate the harm to family or friends who have come to his rescue and the family and friends and bondsman will have an incentive much stronger than altruism to mitigate their own loss by causing the surrender of the fugitive.

How complete ought this salvage to be where the fugitive returns or is returned? Surely the Government is entitled to indemnity for the expense to which it has been put.[1] Should all of the rest of the forfeited bail go back to those who furnished it? It seems to me that the answer must be No. If the principal and those who have put up the bail know that all that will be lost by a temporary absence of the principal is the expense to which the Government will be put, a situation will have been created where a principal and his friends can purchase respite at a semifixed price. Another result of limiting the loss suffered by those who have furnished the security to the expense incurred by the Government would be that those who stood to lose would relax their vigilance in preventing default or in locating the principal after default. In every case there must be a penalty over and above the mere amount of the expense to the Government.[2] That penalty will naturally vary in size according to factors such as whether it is the Government on the one hand or one who furnishes the bail or security on the other who returns the fugitive, such as the expense and trouble that the latter has devoted to the hunt[3] and such as the length of time that the principal has been a fugitive[4] and the stage of the proceedings at which he absconded.[5]

1. See United States v. Davis, 7 Cir., 202 F.2d 621, certiorari denied sub nom. Ferguson v. United States, 345 U.S. 998, 73 S.Ct. 1141, 97 L.Ed. 1404.

2. In United States v. Smith, D.C.W.D. Ky., 5 F.R.D. 274, defendant failed to appear for his trial but did appear two days later and entered a plea of guilty. He had been intoxicated on the date of trial. The court noted that the default had caused the Government little, if any, additional expense or inconvenience, but remitted only $300 of the $500 forfeiture. The court's ground for the partial forfeiture was to discourage future violations of bail covenants. The partial forfeiture as used here bore no relation to the provable expense caused by the default. It was purely a penalty and yet was justifiable because it served to deter defaults.

The old law by denying remission in every case of willful default relied upon a harsher application of the same principle. In Continental Casualty Co. v. United States, 314 U.S. 527, at page 531, 62 S.Ct. 393, at page 395, 86 L.Ed. 426, it was said:

"Paid sureties are often, as here, indemnified. Remission of penalty would inure to the benefit of defendants, who had violated their undertakings of appearance with consequent disorganization of criminal administration. A bail charged with custody of a defendant * * * may exercise to the substantial benefit of criminal administration a high degree of care to prevent default, if he knows the later fortuitous apprehension of the principal will not relieve him of the forfeit."

3. See Stanton v. United States, 9 Cir., 226 F.2d 822, 15 Alaska 673.

4. In Carolina Insurance Co. v. United States, 5 Cir., 283 F.2d 248, 249, the defendant was apprehended two and onehalf years after his default. The surety submitted proof that he had spent $2,909.52 in attempting unsuccessfully to locate defendant, while the Government submitted no proof of its expenditures. A refusal to remit was held not to be an abuse of discretion.

5. Compare United States v. Public Service Mutual Insurance Co., 2 Cir., 282 F. 2d 771, with Dudley v. United States, 5 Cir., 242 F.2d 656. In the former case, the default occurred just before the summing up in the trial and complete refusal to remit was held justified, while in the latter case the default occurred before trial but was cured by the scheduled trial date and complete refusal to remit was held to be an abuse of discretion.

As appears from cases in footnotes 3–5 the condign penalty may be so great as to preclude any remission.

I retain my impression that the cost to the Government occasioned by the defendant's default must have come close to the $500 bail. Since the defendant did not return voluntarily or at the behest of those responsible for the bail there need be no great disposition on the part of the court to strain in their favor. I hold that the discretion of the court was properly exercised and deny the motion for reargument.