**UNITED STATES of America**

v.

Joseph D'ARGENTO, Mike La Joy, Gerald Tomaszck, Patrick Schang and Jean Schang.

**No. 63 CR 550.**

United States District Court
N. D. Illinois, E. D.

March 9, 1964.

Frank E. McDonald, U. S. Atty., Chicago, Ill., for the United States.

George F. Callaghan, Chicago, Ill., for Joseph D'Argento.

Maurice J. Walsh, Chicago, Ill., for Mike La Joy.

Frank G. Whalen, Chicago, Ill., for Gerald Tomaszck.

Richard E. Gorman, Chicago, Ill., for Patrick Schang and Jean Schang.

Edward J. Calihan, Jr., Chicago, Ill., for Maryland Nat. Ins. Co.

PARSONS, District Judge.

This is an application by Maryland National Insurance Company, surety on the appearance bond of the defendant, Joseph D'Argento, for an order vacating or setting aside a declaration of forfeiture made in the subject case, and/or for remission of a judgment of for-

feiture which might be entered by this Court against the surety. There is also before the Court, a motion by the United States for entry of a judgment of default on the declaration of forfeiture.

A Federal Grand Jury sitting here in the Northern District of Illinois returned on September 26, 1963, an indictment charging Joseph D'Argento and four other persons with bank robbery. The charge was that D'Argento and the others, on September 23, 1963, with use of a firearm, robbed the Franklin Park Bank, Franklin Park, Illinois, of approximately $43,097.00. The return of the Grand Jury was made before the Chief Judge of the District who set bail as to each defendant in the amount of $50,000.00, and ordered the indictment suppressed. Four days later, D'Argento and three of the other defendants were apprehended in Chicago. The indictment was then released, and the instant case was docketed and, by lot, assigned to this Court.

On the same day of arrest, D'Argento appeared and moved this Court for a reduction of his bail. His attorney, however, was at the time insufficiently acquainted with the defendant, his background and his financial condition, to address himself reliably to the considerations spelled out in Rule 46 of the Federal Rules of Criminal Procedure, whereupon the motion for reduction was continued to a short date for further hearing.[1]

Before this further hearing, however, the defendant made bail and abandoned his motions. The Maryland National Insurance Company executed as his surety an appearance bond in the full amount of $50,000.00.

For many years and until recently, the form of the bond used in this district was identical to Form 17 which appears in the Appendix to the Federal Rules of Criminal Procedure. Recently, however, a revised form has come into use, and was used in the instant matter. A new condition appearing on it is the following:

"That the defendant is not to depart the Northern District of Illinois * * * except in accordance with such orders * * * as may be issued by * * * the United States District Court for the Northern District of Illinois."

The new form further provides much the same as did the earlier form that:

"If the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith."

From the late hours of November 17, 1963, until the early hours of November 19, 1963, Joseph D'Argento was out of the Northern District of Illinois. He spent a day in Los Angeles, California. Neither he nor his surety sought or obtained permission of this Court to leave the district. In arranging flights to and from Los Angeles, he used an alias. There is evidence that on at least two additional occasions subsequent to making bail in the instant case, he went to Los Angeles for a day and then returned. On each of such occasions, including November 18, he had pre-set court appearances to make in proceedings against him in the Superior Court of California for the County of Los Angeles. Allegedly, he also used these trips for other purposes. Substantial FBI investigation

---

1. Rule 46(c), Federal Rules of Criminal Procedure, specifies that "the amount (of the bail) shall be such as * * * will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." In an emergency hearing on motion to reduce bail generally the parties are expected to advise the Court on these four considerations. Representations of counsel are considered as fact unless contradicted in which instance the motion is set down on a short date for further hearing and the taking of testimony. Similarly, when counsel have not had an opportunity sufficiently to become acquainted with the offense, the defendant, his background and his financial condition, to make responsible representations to the Court, the hearing is continued to a short date to allow time to investigate the matter.

of his activities on November 18, resulted in his being charged, upon his return, with theft of a Chicago-Los Angeles shipment of furs.

On December 4, 1963, while D'Argento was in Federal custody in Chicago, charged with one or more of these newer violations, the United States Attorney appeared *ex parte* before this Court and requested an immediate declaration of forfeiture of the $50,000.00 bond on the ground that D'Argento had breached the condition of the bond requiring Court permission to leave the district. Evidence was heard and the order declaring forfeiture was entered.

The entry of the declaration of forfeiture order was proper. Rule 46(f) (1) makes forfeiture mandatory upon a finding that there has been a breach of a condition of bail. United States v. Kehrt, 15 Alaska 406, 128 F.Supp. 38 (D.Alaska 1955). And a forfeiture may be requested *ex parte*. National Surety Co. v. United States, 29 F.2d 92 (9th Cir. 1928); Western Surety Co. v. United States, 51 F.2d 470 (9th Cir. 1931). It is sufficient for a forfeiture if, in an *ex parte* hearing, the Court, is satisfied from the evidence that the Government has reason to believe that there has been a breach of a condition of the bond. Accord, United States v. Eisner, 323 F.2d 38 (6th Cir. 1963); and a prima facie case of a breach is sufficient for a forfeiture under any circumstances.

Bail bonds are contracts between sureties and the Government which must be strictly construed in accordance with their terms. Dudley v. United States, 242 F.2d 656 (5th Cir. 1957); Heine v. United States, 135 F.2d 914 (6th Cir. 1943); and when the Government shows a breach of any condition of the bond, proof of actual damages to the Government is unnecessary, since the full amount of the bond constitutes liquidated damages in the nature of a penalty. Cf. United States v. Davis, 202 F.2d 621 (7th Cir. 1953).

The surety may, nevertheless, be entitled to some relief. Rule 46 of the Federal Rules of Criminal Procedure empowers the District Courts to exercise considerable latitude in the remission or setting aside of bail forfeiture. Paragraph (f) (2) provides: "The Court *may* direct that a forfeiture be set aside, *upon such conditions as the court may impose*, if it appears that justice does not require the enforcement of the forfeiture." (Emphasis added.) Paragraph (f) (4) provides: "After entry of such judgment, the court *may* remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision." (Emphasis added.)

Clearly, in the adoption of Rule 46, there is indicated the intention to broaden substantially the discretion of the District Courts from that which had theretofore existed. Larson v. United States, 296 F.2d 167 (8th Cir. 1961); Smaldone v. United States, 211 F.2d 161 (10th Cir. 1954). Cf. Continental Casualty Co. v. United States, 314 U.S. 527, 62 S.Ct. 393, 86 L.Ed. 426 (1942), decided before enactment of Rule 46.

In support of the surety's motion that the declaration of forfeiture be set aside or, if judgment be entered, that remission be made, it was alleged that the defendant and the surety, even though they had in fact signed the bond, were not aware that the defendant could not leave the district without the Court's permission, that the Government and this Court were aware, as early as September 23, 1963, that the defendant was on a bail bond requiring his appearance in Los Angeles, California, that the Government has incurred no expense directed toward the apprehension of the defendant and his return to this district, that the defendant has always appeared before this Court when required, and that the default of the principal has not in any way prejudiced the United States.

A motion to set aside or remit a forfeiture of a bail bond clearly is addressed to the discretion of the Court making the declaration. United States v. Carolina Casualty Insurance Co., 237 F.

2d 451 (7th Cir. 1956); United States v. DeStephano, 102 F.Supp. 38 (W.D.Pa. 1952). "Discretion" of course means "sound discretion", not discretion exercised arbitrarily, but with due regard for that which is right and equitable under the circumstances, and directed by reason and conscience to a just result. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); Smaldone v. United States, 211 F.2d 161 (10th Cir. 1954). The elements of consideration in ruling on a motion to set aside or remit a bond forfeiture thus can be many and varied depending largely upon the circumstances of each case.

Factors which merit some, though little, weight in the exercise of discretion here are that a new form was used, and that the defendant and surety were unaware that the defendant could not leave this district without the Court's permission.

Rule 58 of the Federal Rules of Criminal Procedure specifically provides that the forms contained in the Appendix to the Rules are illustrative only and not mandatory.[2] Indeed, the condition providing that the defendant is not to depart the jurisdiction without leave of the Court has been utilized for many years in the Federal Courts. See, Kirk v. United States, 131 F. 331 (2d Cir. 1904); LaGrotta v. United States, 77 F.2d 673, 103 A.L.R. 527 (8th Cir. 1935).

■ Furthermore, the new form that was used here appears both reasonable and proper. The propriety of imposing territorial limitations as a condition of granting release cannot be doubted. United States v. Foster, 278 F.2d 567 (2d Cir. 1960), cert. denied, 364 U.S. 834, 81 S.Ct. 48, 5 L.Ed.2d 60.[3] The Government of the United States, which approved the bond, as well as this Court, has a legitimate interest in knowing the location of the defendant and in attempting to minimize its costs in keeping track of him. In addition, such a restriction enables the surety to locate the defendant in order to maintain his custody of the principal. Almost 100 years ago, it was said that "there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of the jurisdiction without their assent." Reese v. United States, 76 Wall. 13, 76 U.S. 13, 19 L.Ed. 541 (1869). Since the purpose of a bail bond is to insure that the accused will reappear at a given time by requiring another to assume personal responsibility for him on penalty of forfeiture of property (see, 4 Blackstone, Commentaries 380, Hammond Ed. 1890), a territorial restriction, which operates to insure the appearance of the defendant when required, is a permissible condition of bail. The mere fact that the circumstances of the breach do not involve the probability that the defendant in this case will not appear on the date to be set for trial, does not affect the reasonableness of the condition, which must be determined at the time the bond is issued.

■ Of some minor importance also is the fact that the defendant and surety may have been unaware of the terms of the bond, or misled or misinformed as to the contents and effect of the writing. Cf. Taylor v. Fleckenstein, 30 F. 99 (C.C.Or.1887); Fidelity & Deposit Co. v. United States, 47 F.2d 222 (9th Cir. 1931). The parties are held to have read the terms of the bond and are presumed to have understood them. No evidence has been presented showing that, by reason of some disability, the defendant was incapable of reading and comprehending the writing for himself,

---

2. Proposed Amended Rule 46, F.R.Cr.P., would permit the imposition of a variety of nonfinancial conditions as the price for dispensing with the security for a bond, 31 F.R.D. 692. A number of such conditions are suggested in Note, Bail: An Ancient Practice Re-examined, 70 Yale L.J. 966, 975 (1961).

3. Accord, Reynolds v. United States, 80 S. Ct. 30, 4 L.Ed.2d 46 (1959) (Douglas, J. in chambers), reversing the District Court's refusal to permit defendant to leave the country, in view of fact that defendant, an anthropologist seeking employment in Japan, appeared to be a man of his word.

or that he had been imposed upon by some fraudulent device.

■■■ Nevertheless, to the extent that the evidence, including the defendant's and surety's alleged unawareness of all the terms of the bond, demonstrates that the breach was not willful, it is entitled to substantial weight. For it is evident that under Rule 46(f) (2) a District Court has discretion to give relief to bondsmen even though the breach be willful. United States v. Davis, 202 F.2d 621 (7th Cir. 1953). *A fortiori,* evidence indicating a lack of willfulness and showing good faith and total compliance with the other terms of the bond, such as the appearance requirements, should weigh heavily in favor of a motion to set aside or remit at least part of that which has been declared forfeited.

■■■ Of substantial concern to the Court, in and of itself and as an element showing good faith, is the fact that the defendant was required by law to appear at some place outside this jurisdiction. In general, it is a complete defense to forfeiture that the defendant's performance of a condition of a bail bond was rendered impossible by an act of God, or of the law, or of the obligee. Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1872). But the "act of law" which excuses breach must be a law operative in the state where the obligation was assumed, and obligatory in its effect upon her authorities. Taylor v. Taintor, supra; Reese v. United States, 9 Wall. 13, 76 U.S. 13, 19 L.Ed. 541 (1869); United States v. Craft, 162 F.Supp. 578 (S.D.W.Va.1958); Restatement of Security, § 207 (1941). The rationale of the rule is that it would be manifestly unfair to allow the sovereign-obligee or any of its co-ordinate branches to impair the bond obligation by placing

the defendant beyond the reach of the surety, thus preventing his appearance, and then to forfeit the defendant's bond for his failure to appear. (Cases cited above.)

■■■ Where, however, a principal in bail bond in Federal Court is caused to default on such bond by reason of his detention by *state* authorities on a criminal charge, the rationale does not apply. In such a case of so-called diversity of sovereignty,[4] the breach is not totally excused, but a District Court may, in its discretion, grant partial relief to the surety. United States v. Burl, 67 F. Supp. 583 (E.D.Ill.1946).

Another area of legitimate concern pertinent here is the extent to which, if at all, the Government was prejudiced or put to expense and inconvenience by the breach. Cf. United States v. Smoller, 275 F. 1011 (D.Del.1921). While the Court of Appeals for the Seventh Circuit stated in United States v. Davis, 202 F.2d 621, at 625, that "the government was under (no) obligation to produce evidence to show even approximately the total amount of expenses caused by defendant's default," the Court went on to observe that "the (district) Court might well have directed an inquiry on this subject * * *."

■■■ It seems clear, then, that prejudice and expense to the Government is an element that may be considered on a motion to set aside or remit a bond forfeiture. With this in mind, and with due regard for the wise observation of its Circuit Court of Appeals, this Court ordered a hearing and gave the Government an opportunity to prove up any damages or expenses it incurred by reason of defendant's breach.

■■■ The Government sought to prove between two and three thousand

---

4. United States v. Petrone, 19 F.Supp. 704 (D.N.J.1937), distinguishes the situation where the two courts involved are in reality mere coordinate branches under a single sovereign, the United States, e. g., two Federal Courts in different states, from the situation where the two courts are separate and distinct sovereignties, e. g., a State Court and Federal Court in another state, or two State Courts. In the former, the "act of law" constitutes a complete defense, while in the latter it is merely a factor to be considered by the Court in the exercise of its discretion.

dollars worth of expenses, but as the testimony developed, it became apparent that no time or money was spent in attempting *to locate* D'Argento. All of the expenses related to the investigation of the Los Angeles fur robbery. I find such expenses only remotely connected with or *caused* by defendant's breach of the travel restriction. The purpose of the bond as a whole was not to insure against future criminal conduct, but rather, to insure the defendant's appearance in this Court, and the purpose of the travel restriction was to minimize any expenses which might be incurred in locating him. If a purpose of the clause limiting travel was to insure against future criminal conduct, it could easily have read with more clarity to that end. More important, however, is that such a purpose would be utilizing bail for a function which, historically, it was never intended.[5] Furthermore, to read such a purpose into that clause would be unreasonable, for the Government's interest in preventing crime would relate with equal vigor within the Northern District of Illinois as without its jurisdiction.

 Nevertheless, regardless of the foregoing, and even though the Government has not shown how it has been damaged or prejudiced, I cannot in good conscience persuade myself that all of the $50,000.00 bond declared forfeited should be set aside or remitted. A surety owes the Court a duty to make some effort to see that the principal complies with the orders of the Court. United States v. Nordenholz, 95 F.2d 756 (4th Cir. 1938). "When bail is given, the principal is regarded as delivered to the custody of his sureties." Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 371, 21 L.Ed. 278 (1872). The surety has his principal on a string since, under Title 18 U.S.C.A. § 3142, a surety may, *at any time,* arrest the principal and deliver him into the custody of the

United States, and be fully discharged thereby.

The surety here apparently did nothing to explain to the defendant the terms and meaning of the bond, nor did it impress upon the defendant the possible consequences of a breach of its conditions. Neither did the surety (or the defendant) make timely application to this Court for relief from that portion of the bond here in issue. Specifically, the surety could have requested from this Court permission to leave the jurisdiction. Detroit Fidelity & Surety Co. v. United States, 36 F.2d 682 (6th Cir. 1930). This would not have been an alteration of the conditions of the bond or an extension inconsistent with its terms, Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1872), since the very language of the condition permitted exceptions to its operation. Alternatively, the surety could have invited the United States Attorney to join with him in requesting the Court to waive the condition of the bond forbidding the defendant from leaving the jurisdiction.

 I realize that sureties, in general, are often favored, but where, as here, the surety is partially at fault and has done nothing to prevent a breach, a forfeiture of some meaningful amount would be proper. While exemplary damages are often viewed as a vindictive measure, their function in this instance is to educate the surety as to his obligations and responsibilities. This is clearly within the discretion of the Court to set aside or remit an amount which is wise and equitable.

 The surety argues, however, that Illinois law controls the question whether a penalty over and above expense to the Government be allowed for bail forfeiture without proof of actual damages. He is in error. Before the adoption of the Federal Rules of Criminal Procedure in 1946, interstitial mat-

5. Conceivably, bail might be considered "excessive" within the meaning of the Eighth Amendment by virtue of unreasonable and oppressive conditions imposed in the issuance of bail, apart from the monetary amount. Cain v. United States, 148 F.2d 182 (9th Cir. 1945); Cohen v. United States, 82 S.Ct. 526, 7 L.Ed.2d 518 (1962) (Douglas, J. in chambers).

ters concerning bail in the Federal Courts were expressly governed by state procedural law by virtue of a conformity statute. (Former Title 18, § 591—since repealed). See Heine v. United States, 135 F.2d 914 (6th Cir. 1943). However, the present statute, Title 18, § 3041 provides, in part, that "A United States judge or commissioner shall proceed under this section according to rules promulgated by the Supreme Court of the United States." This Court derives from Rule 46 of the Federal Rules of Criminal Procedure a policy necessitating the use of Federal, rather than State, law to govern *all* matters pertaining to bail bonds in the Federal Courts, including such questions as what constitutes breach of a condition of a bail bond, how much evidence is necessary to sustain a declaration of forfeiture in an *ex parte* hearing, what defenses are available to sureties, whether conditions of a bond are reasonable, whether exemplary damages may be allowed for bail forfeiture without proof of actual damages to the Government, and how much of a bail bond should be set aside or remitted after forfeiture. See Note, Rules of Decision In Nondiversity Suits, 69 Yale L.J. 1428 (1960); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Fansteel Metallurgical Corp. v. United States, 172 F.Supp. 268, 145 Ct.Cl. 496 (1959); United States v. Starr, 20 F.2d 803 (4th Cir. 1927); United States v. Travelers Indemnity Co., 215 F.Supp. 455 (W.D. Mo.1963).

■ Under Federal law, exemplary damages are permitted for bail forfeiture without proof of actual damage to the Government. "In every case there must be a penalty over and above the mere amount of the expense to the Government." United States v. Ciena, 195 F.Supp. 511 (S.D.N.Y.1961). The justification of the penalty is that it serves to discourage future violations of bail covenants and to deter defaults. United States v. Smith, 5 F.R.D. 274 (W.D.Ky. 1946).

"If the principal and those who have put up the bail know that all that will be lost by a temporary absence of the principal is the expense to which the Government will be put, a situation will have been created where a principal and his friends can purchase respite at a semi-fixed price. Another result * * * would be that those who stood to lose would relax their vigilance in preventing default * * *." United States v. Ciena, 195 F.Supp. 511, 512 (S.D.N.Y.1961).

All bondsmen must become more aware of their duties and responsibilities. If they disregard these things, intentionally or through neglect, then a forfeiture of the entire amount they guarantee would be proper. The risk they assume presumably is fully understood by them and it is not the judiciary's prerogative to subsidize the bonding business or any particular member thereof.

■ However adverse this decision may appear to the surety, it is far less severe than the ultimate sanction available to a Court in directing that the surety not be permitted thenceforth to guarantee the bonds of defendants before it. Rule 46(e) provides, inter alia, that "[n]o bond shall be approved unless the surety thereon appears to be qualified." Neglect of a surety, as in the instant case, to perform reliably the duties and responsibilities assumed by it may well be sufficient evidence of a lack of a fundamental qualification. I do not find the instant situation warrants such drastic action. Often, the lesson learned today is sufficient to assure that tomorrow's performance will continue satisfactorily.

As Judge Schwellenbach wisely observed in United States v. McNeil, D.C., 50 F.Supp. 516, at 518: "A little more care in the selection of principals and a little less avidity for the securing of bail bond premiums would obviate most of the difficulties presented."

■ Accordingly, I am of the opinion that only $40,000.00 of the $50,-000.00 bond should be returned.

It is hereby ordered that:

The motion of Maryland National Insurance Company for an order vacating or setting aside declaration of forfeiture on $50,000.00 bail bond by this Court on December 4, 1963, is denied.

The motion of the United States of America for an entry of a judgment in the sum of $50,000.00 against Maryland National Insurance Company is granted. Judgment is entered accordingly.

The motion of Maryland National Insurance Company for an order remitting the judgment of forfeiture herein entered is granted to the extent of $40,000.00, but the remaining $10,000.00 of the $50,000.00 judgment shall not be remitted.