66 N.J. Super. 551 (1961)
169 A.2d 702
IRENE DeMARCO VORHIES AND LeROY H. VORHIES, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
SEBASTIANO CANNIZZARO, IMPLEADED AS BENJAMIN CANNIZZARO, T/A BEN'S BEAUTY SHOP AND BARBER SHOP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1961.
Decided April 5, 1961.
*552 Before Judges GOLDMANN, FOLEY and LEWIS.
*553 Mr. Francis J. Lutz argued the cause for appellant (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
Mr. Ralph S. Heuser argued the cause for respondents (Mr. Norman J. Currie, attorney; Messrs. Heuser, Heuser & De Maio, of counsel).
The opinion of the court was delivered by FOLEY, J.A.D.
With our leave defendant appeals from the interlocutory order of the Monmouth County District Court granting a new trial after a jury verdict of no cause of action. See R.R. 2:2-3.
The suit was brought by Mrs. Vorhies to recover damages for personal injuries; her husband asserted a claim per quod. The action arose from an accident which occurred on June 24, 1959 at about 2:00 P.M. in the entranceway of defendant's barber shop located at 161 Main Street, Keansburg, New Jersey. The store is of conventional design. The doorway, set back a few feet from the sidewalk proper, divides two windows which front upon the public sidewalk, and glass panels, set at an angle, are on both sides of the entrance. There was a rubber mat directly in front of the door. Mrs. Vorhies, intending to have a haircut, had turned from the sidewalk into the entranceway, and was approaching the mat when she slipped, lost her balance, and fell. As she did, her head struck the window sill and her right arm went through one of the glass panels. She said she was about two feet from the mat when she fell.
On both direct and cross-examination she testified that she did not know what caused her to slip. Defendant, who did not witness the occurrence, was called from the rear of the store by an employee, Paul Toro. He noticed that Mrs. Vorhies' hand and arm were bleeding profusely and took her to the office of a doctor nearby, where her wounds were treated and bandaged.
Upon their return to the shop they had a conversation in the course of which, according to Mrs. Vorhies, defendant *554 pointed to some small rubber nodules which had been worn loose from the mat and were lying on the walk, and ventured the opinion that these were the cause of her fall. Defendant conceded the conversation, but denied that he had attributed the accident to the nodules.
Either later that day or on the following morning, LeRoy Vorhies visited defendant at the barber shop. He testified that defendant "was very persistent that she had slipped on these little rubber things off the mat." Defendant's denial of this statement was oblique. He said that he did not intimate that he was at fault for the accident; but he conceded that the condition of the mat had been deteriorating for some time and that nodules did come loose from it. These, he said, were swept into the street by Toro, and he testified that Toro had swept the entranceway shortly before the accident occurred. This, Toro confirmed. Toro also testified that while sweeping the floor of the store he saw Mrs. Vorhies fall three feet from the mat, that she was wearing high heels and carried a pocketbook, and that after his employer and plaintiff left for the doctor's office, he picked up a bottle of pills which plaintiff "had in her hand."
Defendant testified that the concrete of which the sidewalk and entranceway were made contained blue stone, rather than gravel, and a photograph in evidence indicates that the sidewalk has the mottled and uneven surface which is characteristic of this type of construction.
The issues of negligence and proximate cause were properly submitted to the jury. Advisedly, in light of the evidence adduced, the trial judge instructed the jury on the effect of circumstantial evidence. In that connection he charged:
"In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would exclude the idea that it was due to a cause with which the defendant was unconnected.
*555 While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from mere possibility of the negligence on the part of a defendant."
In setting aside the jury verdict the court said:
"The Court inclines to the view that a verdict cannot be sustained upon a theory contrary to the one on which it was tried. Such a verdict would of necessity be against the weight of the evidence, as it would go beyond and ignore the theory and facts upon which the case was tried.
Counsel for defendant, in his memorandum, admits that the plaintiffs' proofs showed a little more than the mere occurrence and with this, the Court agrees. However, a close examination of the summation by defendant's counsel will disclose argument indicating proximate cause to have been the result of certain possibilities not supported in fact and not within the rule of fair comment. Additionally, considerable comment adverse to the plaintiffs was made by defense counsel, during his summation, again not supported in fact, in exhorting the jury to draw certain inferences that because of the failure of certain of plaintiffs' witnesses to appear, their testimony would have been unfavorable to the plaintiffs."
It is plain from this that the rationale of the court's order was not that the verdict was so contrary to the weight of the evidence that it clearly and convincingly appeared to have been the result of mistake, partiality, prejudice or passion, as is required by R.R. 4:61-1(a), but rather, that the argument of defendant's attorney in his summation was improper, and had so diverted the minds of the jury from the issues in the case that the verdict was arrived at by mistake. This would, of course, furnish adequate reason for nullifying the verdict if the summation was improper, and the court was convinced that the impropriety influenced the verdict.
The portions of the summation which the court found to be beyond the range of fair comment are in two categories. In discussing the happening of the accident the attorney said:
"The important thing is, ladies and gentlemen, first of all the important thing is that Mrs. Vorhies does not know what she fell on and I think you ladies and gentlemen know that the human body *556 is rather frail at times and there are any number of reasons that could have caused Mrs. Vorhies to fall, not necessarily any small rubber particles. She could have fallen on that sidewalk, that is a possibility."
At this point plaintiffs' attorney voiced the objection that "the law does not deal with possibilities." The judge permitted the defendant to proceed, observing that he would "instruct the jury in that regard when we come to it as to what they may consider." Defendant's attorney continued:
"Now, as I said, ladies and gentlemen, there are any number of reasons which could have caused her to fall, and I say that the body is rather frail, that people fall every day. The woman was wearing high heels  the testimony shows that  she had something in her hand, and she had a pocketbook, and she had some pills and these pills were still in her hand, apparently, at the time that she fell. She could have been unduly concerned over these things and she could have, as a lot of people do, could have simply fallen on the sidewalk without regard to any dangerous condition which was on the premises she said she fell at, and that is it."
In commenting on plaintiffs' damages, defendant's attorney noted that she had testified that when she returned to work as hostess in three "Diner" establishments, she was unable to perform her duties because of her injuries, and after working for one day was laid off by her employer, who "felt [she] should stay home until it healed up"; that she was engaged by a Mr. Walling, a contractor, to do typing work but was so hampered by her injuries that she left after two days; and that subsequently she was employed as a cashier and packer by the "Grand Union," but was discharged after one day because while "bundling" a package she dropped a bottle of vinegar. The attorney then remarked that none of the employers mentioned by plaintiff had been called to corroborate her testimony in this regard, and went on to say:
"* * * we have the name of the Paramount Diner as where she went as the testimony indicates to get a job and she said that she talked to someone, the employer, the man who had been her *557 employer at the Paramount Diner, and I asked if he was in court. No, he is not in court. He had an opportunity, the plaintiff had an opportunity to bring him in court Wednesday and they had another opportunity to bring him in court today. But, do you see him? No. There is not a shred of corroboration to that story as to attempting to go back to work at the Paramount Diner.

* * * * * * * *
And that is not all. She also stated that she attempted to get a job at the Grand Union, and stated that she spoke to someone at the Grand Union and was forced to discontinue her work because of the disability. Where is the man in the Grand Union? He is not here either.

* * * * * * * *
And, gentlemen, there was other comment made by Mrs. Vorhies that she had went to work in the past and she attempted to work for a Mr. Ralph Walling, and she was attempting to do some secretarial work for him in the nature of bookkeeping and so forth. And where is Mr. Walling? Mr. Walling is not in court.
None of these people are in court and she had every possible every proper opportunity to bring them in court to substantiate her case, and she has failed to do so."
The defendant contends that these comments were within the realm of proper argument and thus that the basis on which the trial court set aside the verdict was without legal support. We agree. As a matter of fact, plaintiffs now concede that it is permissible to comment on the absence of witnesses. But they now take a tack, not pursued below, that the jury was misled to believe that the failure to bring in the absent witnesses, or to account for their absence, adversely affected the weight of plaintiffs' evidence on the issue of liability. This contention is posited upon the fact that immediately after these comments the attorney said that she had not established her case by a preponderance of the evidence. Plaintiffs assert that this may have led the jury to believe that if plaintiff did not prove her damages by a preponderance of the evidence, her case fell entirely even though the defendant was found liable. We find this to be a strained and unwarranted construction of the summation, entirely devoid of merit.
Generally speaking, the granting or denial of a motion for new trial rests in the sound discretion of the *558 trial court and is not reviewable unless it clearly appears that the action taken constituted an abuse of discretion. Hartpence v. Grouleff, 15 N.J. 545, 549 (1954), R.R. 1:5-3. However, it is well settled that "discretion" means legal discretion, in the exercise of which the trial judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly. Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960). Consequently, if the trial judge misconceives the applicable law, or misapplies it to the factual complex, in total effect the supposed exercise of legal discretion, lacking a foundation in law, becomes an arbitrary act, however conscientious may have been the judge in the performance of it. Ibid. When this occurs it is the duty of the reviewing court to adjudicate the controversy anew in light of the applicable law in order that a manifest denial of justice be avoided. Ibid.
In Botta v. Brunner, 42 N.J. Super. 95, 108 (App. Div. 1956), modified 26 N.J. 82 (1958), we stated that counsel may argue from the evidence to any conclusion which the jury is free to arrive at. And in 88 C.J.S. Trial § 181c, p. 356 (1955), the following is noted:
"Counsel may state and comment on all proper inferences from the evidence, and a great variety of particular deductions and inferences have been held proper or not error in the light of the particular facts of the case. Counsel is allowed much latitude in drawing and arguing inferences from the evidence; he may draw conclusions from the evidence on his own system of reasoning, although such inferences as stated by counsel are inconclusive, improbable, illogical, erroneous, or even absurd, unless such conclusions are couched in language transcending the bounds of legitimate argument. Counsel may draw an inference from the evidence although the inference is contrary to other evidence. However, it is improper for counsel to draw inferences where there are no grounds for them in the evidence, or to indulge in denunciations based on assumed facts. * * *"
Quite plainly, the argument that it was possible that the proximate cause of Mrs. Vorhies' injuries was other than *559 one connected with defendant's negligence was based on a legitimately arguable inference. It is a fact, as the attorney argued, that human beings fall for a myriad of reasons, and sometimes for no apparent reason at all. It was a fact that Mrs. Vorhies was wearing high heels, and it was inferable that she carried a pocketbook in one hand and a bottle of pills in the other. It was undenied that she had just made a turn from the sidewalk into the entranceway. Hence, it was well within the fact-finding power of the jury to conclude that the combination of these factors caused her to lose her balance, and that she fell because of them, rather than by slipping on one or more small rubber nodules which may have been on the walk. Thus, under the rule above stated, the attorney was at liberty to urge that the jury so conclude.
In holding that this comment was improper because it imported to the jury's deliberation a mere possibility of non-liability, the trial judge misconceived the law. It is, of course, well settled that a plaintiff has the burden of offering evidence which is such as to justify an inference of probability, as distinguished from mere possibility, that defendant is responsible for his injuries. As was pointed out in Callahan v. National Lead Co., 4 N.J. 150, 154-155 (1950):
"Our courts have repeatedly decided that the existence of a possibility of defendant's responsibility for plaintiff's injuries is insufficient. In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would exclude the idea that it was due to a cause with which the defendant was unconnected."
But this does not mean that the defendant may not argue, in a circumstantial evidence case such as this, the possibility that the cause of the injury was not attributable to his wrongdoing provided, of course, that there is evidence from which an inference of such possibility may be drawn. In *560 so doing the defendant, having no affirmative burden to establish that the wrongful act charged to him was not the proximate cause of the injury, merely urges such possibility as a factor which the jury may consider in its ultimate determination of whether the plaintiff has sustained his burden of excluding the idea that the accident was due to a cause with which defendant was unconnected.
As we have already stated, plaintiffs do not now attempt to support the trial court's criticism of defendant's comments on the failure to call corroborating witnesses in support of her damage claim. That such comment is permissible in circumstances such as are here presented is beyond debate. See Schultz v. Hinz, 20 N.J. Super. 346, 351 (App. Div. 1952), and authorities cited therein.
We therefore conclude that since the questioned comments by defendant's attorney were within the ambit of fair advocacy, the setting aside of the verdict by reason of them did not fall within the compass of the court's discretion.
Our examination of the appendix has brought to our attention that the damages demanded in plaintiffs' complaint were the sum of $5,000. The jurisdiction of the county district court in a negligence suit is limited to $3,000, exclusive of costs. N.J.S. 2A:6-34(a). The county district court, therefore, did not have jurisdiction, and since the jurisdiction here deals with subject matter, as distinguished from parties, it cannot be waived or conferred  even by consent. However R.R. 1:27D provides:
"(a) * * * where any court is without jurisdiction of the subject matter of a cause * * * it shall, on motion or on its own initiative, order the cause, * * * transferred to the proper court; and the cause shall then be proceeded upon as if it had been originally commenced in the proper court.
(b) Where any cause transferable under paragraph (a) because of lack of jurisdiction over the subject matter is appealed without having been transferred, the appellate court may decide the appeal and direct the appropriate judgment to be entered in the court to which the cause should have been transferred.
(c) When pursuant to this rule a * * * judgment [is] ordered entered in the proper court, the order shall be conditioned *561 upon the payment by the plaintiff to the clerk of such court the fees that would have been payable had the cause originally been instituted in such court."
Accordingly, the order of the county district court granting a new trial is set aside and it is ordered that final judgment be entered in favor of the defendant in the Monmouth County Court, and that plaintiffs forthwith pay to the clerk of such court the fees which would have been payable had the cause originally been instituted therein.
Reversed.